UNITED STATES DISTRICT COURT
District of Minnesota

| | |
|---|---|
| Angela McGowan, Trustee for the next-of-kin of Jon Ross Wentz deceased,<br><br>      Plaintiff,<br><br>v.<br><br>Evergreen Recovery, Inc., a Minnesota Business corporation, Second Chances Sober Living, Inc., a Minnesota Business corporation, Second Chances Recovery Housing, Inc., a Minnesota Business corporation, Michael A. Slattery, and Joseph Francis Sandoval II.<br><br>      Defendants. | Court File No.:<br><br>**COMPLAINT FOR CIVIL CASE** |

Plaintiff, for her Complaint and cause of action against Defendants, states and alleges:

**PARTIES**

1.  At all times relevant herein, Plaintiff, Angela McGowan, is the Trustee for the next of kin of Jon Ross Wentz, deceased, hereinafter referred to as "Mr. Wentz" or "the Decedent", duly appointed by order of the Ramsey County District Court dated October 25, 2023, case file number 62-CV-23-5541. Plaintiff resides in the City of Valley Center, State of Kansas.

2.  At all times relevant herein, Defendant Evergreen Recovery, Inc., hereinafter referred to as "Evergreen," on information and belief, is a Minnesota business corporation duly organized under the laws of the State of Minnesota and

having its principal place of business at 1400 Energy Park Drive, in the City of St. Paul, County of Ramsey, State of Minnesota, 55108.

3. At all times relevant herein, Second Chances Sober Living, Inc., hereinafter referred to as "SCSL," on information and belief, is a Minnesota business corporation duly organized under the laws of the state of Minnesota, but not registered with the Minnesota Secretary of State.

4. At all times relevant herein, Second Chances Recovery Housing, Inc., hereinafter referred to as "SCRH," on information and belief, is a Minnesota business corporation duly organized under the laws of the state of Minnesota, but not registered with the Minnesota Secretary of State.

5. At all times relevant herein, Defendant Michael A. Slattery resides at 4912 Vicennes, #108, in the City of Cape Coral, State of Florida, and was the owner of a house at 1157 Lawson Avenue, hereinafter referred to as "1157," in the City of St. Paul, County of Ramsey, State of Minnesota.

6. At all times relevant herein, Defendant Joseph Francis Sandoval II, hereinafter referred to as "Defendant Sandoval," was a resident of 796 Capitol Heights, hereinafter referred to as "796," in the City of St. Paul, County of Ramsey, State of Minnesota.

## DIVERSITY JURISDICTION AND VENUE

7. This is an action for wrongful death pursuant to Minnesota Statute, § 573.02. However, Federal Court jurisdiction exists in this matter pursuant to 28 United States Code §1332 because Plaintiff is a resident of the State of Kansas, and the

Defendants are of diverse citizenship, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. All actions that give rise to this Complaint occurred within the State of Minnesota thereby making United States District Court for the District of Minnesota an appropriate and convenient venue for this case.

## FACTS

9. Decedent, Jon Ross Wentz, at all times relevant herein, was a tenant at 1157, which was ostensibly and allegedly being operated as a Sober Home, pursuant to Minnesota Statute § 254B.181, in the City of St. Paul, County of Ramsey, State of Minnesota.

10. At all times relevant herein, Defendant Evergreen promoted itself as providing substance abuse disorder and mental health disorder treatment and characterized itself as offering services to those seeking services.

11. At all times relevant herein, SCSL and SCRH functioned as agents, partners, and subsidiaries of Evergreen in its overall business operations in Minnesota.

12. At all times relevant herein, Defendant Evergreen offered housing, publishing the following statement on its website: "Evergreen Recovery partners with local community partners & Sober Homes to assist in free housing while attending outpatient services at Evergreen."

13. At all times relevant herein, on information and belief, Defendant Evergreen partnered with numerous community partners to operate living residences described as "Sober Homes" in the St. Paul area, including the houses located on 1157 Lawson Avenue and 796 Capitol Heights.

14. Minnesota Statute § 254B.181 authorizes and describes "Sober Homes" and specifies that such licensed facilities must prohibit residents from using alcohol or illicit drugs by having "policies requiring abstinence from alcohol and illicit drugs."

15. The homes operated by Evergreen at 1157 Lawson Avenue and 796 Capital Heights were described as "harm reduction" residences, meaning that alcohol and illicit drug use were allowed and engaged in by residents.

16. On information and belief, there was regular illicit drug use at the homes at 796 and 1157 at all times leading up to and including October 20, 2022, with the knowledge of Evergreen staff at both locations.

17. At all times relevant herein, on information and belief, Defendant Slattery owned numerous houses in which he partnered with and had a mutual understanding with Evergreen to operate said houses as cooperative living residences described as Sober Homes in the St. Paul area, including the house located on 1157 Lawson Avenue.

18. The homes located at 796 and 1157 did not qualify as "Sober Homes" under Minnesota law.

19. Defendant Slattery has more than one house in Minnesota that are operated in partnership with Evergreen, SCSL, and SCRH and designated as so-called "Sober Homes".

20. Defendants Evergreen, SCSL, SCRH, and Slattery retained the right to enter the Slattery homes, including 1157, and to control access and use of said properties.

21. Defendants Evergreen, SCSL, SCRH, and Slattery had the right to a voice in the direction and control of the means of the operation of said living facilities.

22. Defendant Slattery is compensated for use of his properties, including 1157 by Evergreen, SCSL, or SCRH. No compensation is paid to Slattery by tenants at the houses.

23. Defendants Evergreen, SCSL, and SCRH are compensated for tenancies in the so-called Sober Homes by the State of Minnesota and the federal government by billing Medicaid and Medicare. Those funds are shared with Defendant Slattery as compensation for use of the premises.

24. At all times relevant herein, on information and belief, Defendant Slattery and Defendant Evergreen were engaged in a joint business venture and/or joint enterprise whereby both Defendants profited from their agreement/arrangement.

25. On July 1, 2021, Defendant Joseph Sandoval, II was civilly committed as mentally ill and chemically dependent by the Hennepin County District Court, file number 27-MH-PR-21-709. He had been diagnosed with substantial psychiatric disorders that "grossly impairs [sic] his judgment, behavior, capacity to recognize reality, and ability to reason or understand." The Order went on to describe Defendant Sandoval as having a lengthy history of violence, substance abuse, and an inability to care for his daily needs. It noted his history of assault, attempted stabbing, use of methamphetamine, and suffering from hallucinations and disorientation. Pursuant to this commitment, he was institutionalized at Anoka Metro Regional Treatment Center (AMRTC) on July 8, 2021.

26. Less than 30 days later, on August 4, 2021, Defendant Sandoval was discharged to CARE Anoka, with a discharge diagnosis of unspecified anxiety disorder, substance use disorder (methamphetamine and heroin), and borderline personality disorder.

27. While at CARE, he was noted to become verbally threatening at times with staff.  It was also noted that he needed to work on impulse control and appropriate reactions, as well as his long-term sobriety.

28. Defendant Sandoval was discharged from CARE Anoka due to staff shortages and was transferred directly to Evergreen on December 1, 2021.  At that time, he was still the subject of the civil commitment.

29. At all times relevant herein, pursuant to his civil commitment order and transfer to Evergreen, Defendant Sandoval was in the care, custody, and control of Evergreen, SCSL, and/or SCRH.

30. At all times relevant herein, on information and belief, Defendant Sandoval was purportedly enrolled in a substance abuse treatment and residing at 796 Capitol Heights so-called sober home, operated by Defendant Evergreen. Defendant Sandoval continued to use alcohol and illicit drugs while residing at 796.

31. At all times relevant herein, on information and belief, the purported substance abuse rehabilitation and sober living services provided to Defendant Sandoval failed to comply with statutory mandates for said services.

32. On information and belief, while at Evergreen, Defendant Sandoval experienced a decline in his mental health and a relapse into use of illicit drugs over

many months. Defendant Sandoval had multiple positive urinalysis drug screenings while at Evergreen before October 20, 2022.

33. On information and belief, Defendant Sandoval had been non-compliant with his anti-psychotic medication while residing at 796.

34. On information and belief, Defendant Sandoval's use of illicit drugs at 796 exacerbated his anti-social feelings and behavior.

35. At all times relevant herein, on information and belief, Defendant Evergreen knew or should have known that residents of its properties, including Defendant Sandoval, were engaged in illicit drug use and openly permitted that use.

36. At all times relevant herein, on information and belief, Defendant Evergreen knew or should have known that some residents of Defendant Slattery's properties, including Defendant Sandoval, had a history of violence and/or mental illness.

37. At all times relevant herein, on information and belief, Defendant Evergreen knew that Defendant Sandoval had a history of violent behavior and unprovoked attacks on others.

38. At all times relevant herein, on information and belief, Defendant Evergreen knew that Defendant Sandoval, while he was a tenant of Defendants Evergreen, SCSL, SCRH, and Slattery was under a Mental Illness Commitment because he was considered a danger to himself and/or others.

39. At all times relevant herein, on information and belief, Defendant Slattery knew or should have known that representations of physical safety were made to his

house residents, including the decedent, Jon Ross Wentz, and that they reasonably relied upon those representations in deciding to occupy his property.

40. At all times relevant herein, on information and belief, Defendants Evergreen, SCCL, and SCRH knew or should have known that representations of physical safety were made to their house residents, including the decedent, Jon Ross Wentz, and that they reasonably relied upon those representations in deciding to occupy his property.

41. On information and belief, on October 20, 2022, while Defendant Sandoval was a custodial tenant of Evergreen at the so-called sober home at 796 Capitol Heights, an issue arose between him and other persons or residents that prompted his transfer from that location.

42. On October 20, 2022, Chris Palmer was employed by Defendant Evergreen as an Evergreen Lead Housing Specialist.

43. On October 20, 2022, while acting in the course and scope of his employment with Evergreen, SCSL, and SCRH, and while Defendant Sandoval was a custodial tenant of 796, Chris Palmer determined to move Defendant Sandoval from 796 to 1157. While planning the move, Chris Palmer did not consider warning the other residents of 1157, advising them to depart the premises, or to arrange for Defendant Sandoval to be supervised when left at 1157. Defendant Sandoval had no right or ability to object to this transfer.

44. Chris Palmer transported Defendant Sandoval to 1157 with his belongings at about 3:00 p.m. on October 20, 2022, and departed, leaving him unattended and unsupervised in front of the TV at about 3:30 p.m.

45. On October 20, 2022, at the time of his transfer, Defendants Evergreen, SCSL, and/or SCRH knew or should have known Defendant Sandoval was under the influence of illicit drugs.

46. At the time Defendant Sandoval was moved to 1157 by Chris Palmer, he was under the influence of voluntarily consumed illicit drugs, including but not limited to fentanyl.

47. On the afternoon of October 20, 2022, Jon Ross Wentz was a new tenant at 1157 Lawson Avenue in the City of St. Paul, County of Ramsey, State of Minnesota, and was upstairs in his bedroom.

48. Also, on the afternoon of October 20, 2022, Jason Timothy Murphy was at the 1157 residence working on installing a floor in a section of the basement. Mr. Murphy was not a tenant, patient, or client of Evergreen.

49. Mr. Murphy had come to the 1157 residence with the owner, Defendant Michael A. Slattery, to work on the basement. Defendant Slattery had left him there working before Defendant Sandoval arrived.

50. On information and belief, at the time Defendant Sandoval was moved into 1157 on October 20, 2022, he suffered from severe mental illness, later diagnosed as mental illness in the form of paranoid schizophrenia, personality disorder, history of PTSD, anxiety disorder, opioid use disorder (severe), stimulant use disorder (amphetamine, cocaine), and cannabis use disorder.

51. At all times relevant herein, on information and belief, Defendants Evergreen, SCSL, and/or SCRH, including but not limited to Chris Palmer, knew or

should have known that Defendant Sandoval had a history of perpetrating physical violence that made him a risk to the safety of other residents, including Mr. Wentz.

52. At all times relevant herein, on information and belief, Defendant Evergreen, including but not limited to Chris Palmer, knew or should have known that Defendant Sandoval had a history of mental illness that made him a risk to the safety of other residents, including Mr. Wentz.

53. Shortly after 3:30 p.m., while at 1157, Defendant Sandoval entered Mr. Wentz's personal area, demonstrated an obvious threat, assaulted him with a knife and hammer, stabbing him several times, causing him first extreme terror and emotional distress, then extreme pain, and eventually death.

54. At the same place and approximately the same time, Defendant Sandoval entered the basement area where Mr. Murphy was working and assaulted him with a knife and hammer, stabbing him several times, causing him extreme terror and emotional distress, extreme pain, and eventually death.

55. Almost immediately after the murders of Mr. Wentz and Mr. Murphy, Defendant Sandoval encountered in the basement stairwell of 1157 Joshua Paul Adams, another tenant of Defendant Evergreen, SCSL, SCRH, and Slattery at 1157 who was returning home after a meeting.

56. Defendant Sandoval attacked Mr. Adams and tried to restrain and choke him, but Mr. Adams was able to break away, exit the premises, and cry for help, resulting in St. Paul Police Department officers arriving on the scene and arresting Defendant Sandoval.

57. Based on his statements to police and interviewers, prior to and during his assault and battery of Mr. Wentz, Defendant Sandoval was suffering from severe hallucinations and delusions prompted by voices on the television at 1157, believed that others in the house would attack and kill him, and had to "take the opportunity" to attack them and kill them first.

58. Before Defendant Sandoval attacked and murdered Mr. Wentz, Evergreen's employees, including Chris Palmer, knew or should have known of the risk of harassment, assault, and battery presented by Mr. Sandoval.

59. At no time during the transfer of Defendant Sandoval were any warnings given by Defendants Evergreen, SCSL, SCRH, or Slattery to Jon Ross Wentz or Jason Timothy Murphy of any risk or danger presented to them by Defendant Sandoval's presence on the premises.

60. On information and belief, no Evergreen personnel took any action to prevent Defendant Sandoval from making threats and engaging in injurious conduct toward residents.

### COUNT I – NEGLIGENCE OF DEFENDANTS EVERGREEN, SCSL, SCRH IN DELIBERATELY CREATING A RISK TO OTHERS

61. Plaintiff realleges paragraphs 1-60 herein.

62. Defendants SCSL and SCRH are vicariously liable for all negligence, carelessness, and breach of duty attributable to Defendant Evergreen.

63. Defendants Evergreen, SCSL, and SCRH, on information and belief, represented they were providing temporary custodial housing to Defendant Sandoval as part of their program.

64. On information and belief, said Defendants were aware that before his admission to Evergreen, Defendant Sandoval was found incompetent to stand trial in pending violent felony charges.

65. On information and belief, Defendant Evergreen, upon Defendant Sandoval's admission to Evergreen facilities, Evergreen knew of his illicit drug abuse addiction.

66. On information and belief, at all times relevant herein, Defendants Evergreen, SCCL, and SCHR knew or should have known that Defendant Sandoval's continued use of alcohol and illicit drugs while in their custody and control exacerbated both Defendant Sandoval's mental illness, addiction, and violent propensities.

67. On information and belief, Defendant Evergreen knew or should have known of Mr. Sandoval's potential to violently injure and attempt to injure others.

68. On information and belief, Evergreen knew or should have known Defendant Sandoval suffered from delusions, mental illness, mental defect, and severe psychological conditions that made him a danger to others, including the decedent.

69. On information and belief, knowing that Defendant Sandoval was a violent and aggressive man, it was foreseeable to said Defendants that Defendant Sandoval would engage in injurious conduct toward other residents and or persons, including Mr. Wentz and Mr. Murphy.

70. Without regard to the grave risk presented by Defendant Sandoval, Defendants Evergreen, SCSL, and SCRH negligently, carelessly, and deliberately, planned, transported, introduced, placed, and moved Defendant Sandoval and his belongings into an occupied premises without alerting or warning those present of the

dangers presented by Defendant Sandoval, and abandoned him there with no supervision or oversight, constituting misfeasance and neglect of their duties created by their knowledge of the grave risk he presented to any occupants of the premises.

71. Defendant Evergreen is vicariously liable for the conduct of Chris Palmer.

72. Said transfer of Defendant Sandoval was for housing purposes only and did not constitute treatment, therapy, or professional services to either Defendant Sandoval, Mr. Wentz or Mr. Murphy.

73. The tenancy of Defendant Sandoval and Mr. Wentz did not constitute residence in a so-called sober home, because the residences were operated as "harm reduction" residences, allowing and knowing of illicit drug use and did not qualify as a statutory sober home.

74. Defendants' foreseeability of the risk to Mr. Wentz created a duty to protect him from harm caused by Defendant Sandoval.

75. Based on information and belief, given what Defendant Evergreen knew about Defendant Sandoval and his foreseeable risk of injuring someone, including Mr. Wentz, the defendant had a duty to protect Mr. Wentz from harm by Defendant Sandoval and to prevent Defendant Sandoval from entering their treatment and housing facilities.

76. Defendants Evergreen, SCSL, and SCRH negligently, carelessly, and intentionally created a grave risk to Mr. Wentz and failed to take measures to protect Mr. Wentz from that foreseeable risk.

77. Defendants Evergreen's, SCSL's, and SCRH's careless, thoughtless, and negligent actions and inactions described herein occurred prior to Defendant Sandoval's transfer and while he was still a resident of 796.

78. As a direct and proximate result of this negligence, the Defendants caused the assault, battery, and wrongful death of decedent, Jon Ross Wentz.

79. As the direct and proximate result of this negligence, Defendants Evergreen, SCSL, and SCRS are liable to Plaintiff for all the harms and losses suffered by Mr. Wentz in his assault and murder by Defendant Sandoval, and for all the harms and losses suffered by the next-of-kin as described herein and as provided by law.

**COUNT II – NEGLIGENCE OF EVERGREEN, SCSL, AND SCRH IN FAILING TO PROTECT A PERSON IN A SPECIAL RELATIONSHIP FROM INJURY BY A THIRD PARTY**

80. Plaintiff realleges paragraphs 1-79 herein.

81. Defendants SCSL and SCRH are vicariously liable for all negligence, carelessness, and breach of duty attributable to Defendant Evergreen.

82. Defendants Evergreen, SCSL, and SCRH are vicariously liable for the conduct of Chris Palmer.

83. Defendants Evergreen, SCSL, and SCRH had a special relationship with Mr. Wentz arising from the following circumstances:

   a. Said Defendants provided free housing to Mr. Wentz on condition that he voluntarily and continuously be involved in Defendants' activities, permitting them to bill State and federal medical payment programs;

   b. Mr. Wentz was essentially in a controlled relationship with said Defendants, as said Defendants controlled his residence premises, his conduct on the premises, and his right to remain on the premises;

   c. Mr. Wentz was essentially deprived of the normal opportunity to protect himself by choosing his own roommates;

    d. Said Defendants assumed the responsibility to arrange all Mr. Wentz's housing needs and accommodations, including choosing his roommates; and

    e. Said Defendants made representations to Mr. Wentz that residents of their homes would be provided safe housing.

84. The tenancies of Defendant Sandoval and Mr. Wentz did not constitute residence in a so-called sober home, because the residences were operated as "harm reduction" residences, which knowingly allowed alcohol and illicit drug use, and did not qualify as statutory sober homes.

85. Defendants Evergreen, SCSL, and SCRH had a duty to Mr. Wentz to provide a safe environment, free from grave physical danger, and to supervise Defendant Sandoval as described above to prevent him from causing foreseeable harm to others, including Mr. Wentz.

86. Defendants Evergreen, SCSL, and SCRH failed to take any remedial, corrective, protective, disciplinary, or other supervisory action against Defendant Sandoval despite their knowledge of his propensity for violence and his potentially dangerous psychological condition.

87. Defendants Evergreen, SCSL, and SCRH carelessly, negligently, and heedlessly breached said duty to Mr. Wentz.

88. As a direct and proximate result of this negligence, Defendants Evergreen, SCSL, and SCRH caused the assault, battery, and wrongful death of decedent, Jon Ross Wentz.

89. As the direct and proximate result of this negligence, Defendants Evergreen, SCSL, and SCRS are liable to Plaintiff for all of the harms and losses suffered

by Jon Ross Wentz in his assault and murder by Defendant Sandoval, and for all the harms and losses suffered by the next-of-kin as described herein and as provided by law.

### COUNT III – NEGLIGENCE OF DEFENDANTS EVERGREEN, SCSL, AND SCRH ARISING OUT OF ASSUMPTION OF DUTY

90. Plaintiff re-alleges paragraphs 1-89 herein.

91. Defendants SCSL and SCRH are vicariously liable for all negligence, carelessness, and breach of duty attributable to Defendant Evergreen.

92. Defendants Evergreen, SCSL, and SCRH voluntarily undertook housing of Jon Wentz, including but not limited to providing security to his person, and thereby assumed a duty to exercise reasonable care in the performance thereof.

93. Jon Ross Wentz reasonably relied on Defendants' undertaking and refrained from seeking alternative means to protect his person or property.

94. Defendants Evergreen, SCSL, and SCRH breached the assumed duty by failing to exercise reasonable care in the performance of their undertaking by failing to warn Jon Wentz of the arrival and presence of Defendant Sandoval on the premises, and failing to take any remedial, corrective, protective, or other supervisory action against Defendant Sandoval, thereby increasing the risk of harm to Jon Ross Wentz.

95. As a direct and proximate result of this negligence, Defendants Evergreen, SCSL, and SCRH caused the assault, battery, and wrongful death of decedent, Jon Ross Wentz.

96. As the direct and proximate result of this negligence, Defendants Evergreen, SCSL, and SCRS are liable to Plaintiff for all of the harms and losses suffered by Jon Ross Wentz in his assault and murder by Defendant Sandoval, and for

all the harms and losses suffered by the next-of-kin as described herein and as provided by law.

### COUNT IV VICARIOUS LIABILITY- DEFENDANT SLATTERY

97. Plaintiff realleges paragraphs 1-89 herein.

98. Defendant Slaterry was engaged in a joint enterprise with Defendants Evergreen, SCSL, and SCRH in the operation of the residence at 1157.

99. All knowledge, negligence, carelessness, duty, breach of duty, and failure to adhere to law regarding the operation of so-called Sober Homes alleged herein against Defendants Evergreen, SCSL, and SCRH is imputed to Defendant Slattery as a result of his partnership and joint enterprise he and said Defendants herein operated.

100. Additionally, Defendant Slattery had a common law duty to Mr. Wentz to provide reasonably safe living conditions to him.

101. Defendant Slattery had a duty to ensure that reasonable policies were in operation at his residences provided for use by Defendants Evergreen, SCSL, and SCRH to the extent necessary to provide a safe environment for his tenants.

102. As a direct and proximate result of the carelessness, negligence, and breach of duty of Defendants herein, Defendant Slattery is vicariously liable for the assault, battery, and wrongful death of decedent, Jon Ross Wentz, and for all of the harms and losses suffered by Mr. Wentz in his assault and murder by Defendant Sandoval, and for all the harms and losses suffered by the next-of-kin as described herein and as provided by law.

### COUNT V-ASSAULT AND BATTERY-DEFENDANT SANDOVAL

103. Plaintiff realleges paragraphs 1-60 herein.

104. Defendant Joseph Francis Sandoval II was a resident of 796 on October 20, 2022, when it was determined that he should be moved to 1157.

105. Upon being transported and left at 1157, Defendant Sandoval went to the second floor of said residence, located Mr. Wentz, and assaulted him with a knife, stabbing him multiple times with the intention of killing him and, in fact, caused his death on that date.

106. During said assault and murder, Mr. Wentz suffered great terror, pain, and torture until he finally expired.

107. As a direct and proximate result of his assault, battery, and murder of Mr. Wentz, Defendant Sandoval is liable to Plaintiff for all the harms and losses suffered by Mr. Wentz in his assault and murder by Defendant Sandoval, and for all the harms and losses suffered by the next-of-kin as described herein and as provided by law.

## DAMAGES

108. As a direct and proximate result of the carelessness, negligence, and breach of duty of Defendants, Mr. Wentz suffered pain, terror, and death and his next-of-kin have suffered and continue to suffer pecuniary loss, including but not limited to the loss of the support, aid, advice, comfort, assistance, companionship, and relationship with Mr. Wentz, all to their personal loss in a reasonable amount greater than Fifty-thousand dollars ($50,000.00) each.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Trustee for the next-of-kin of Jon Ross Wentz, prays this Court enter judgment in her favor on behalf of the next-of-kin and against Defendants, jointly and severally in a reasonable amount greater than Fifty-thousand and No/100

dollars ($50,000.00), and for such other and further relief as this court deems just and equitable.

                                            LINDELL & LAVOIE, LLP

Dated: October 2, 2025                BY: */s/Andjelka R. Moline*
                                            James A. Lavoie ARN 61232
                                            lavoie@lindellandlavoie.com
                                            Andjelka R. Moline, ARN 0402375
                                            amoline@lindellandlavoie.com
                                            Benjamin A. Lavoie, ARN 0341721
                                             benlavoie@lindellandlavoie.com
                                            431 South 7th Street, Suite 2420
                                            Minneapolis, MN, 55415
                                            612/339-8811
                                            ATTORNEYS FOR PLAINTIFF

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: <u>October 2, 2025</u>

LINDELL & LAVOIE, LLP

BY: <u>/s/Andjelka R. Moline</u>
James A. Lavoie ARN 61232
lavoie@lindellandlavoie.com
Andjelka R. Moline, ARN 0402375
amoline@lindellandlavoie.com
Benjamin A. Lavoie, ARN 0341721
benlavoie@lindellandlavoie.com
431 South 7th Street, Suite 2420
Minneapolis, MN, 55415
612/339-8811
ATTORNEYS FOR PLAINTIFF